IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                            :          CASE NO. 12-08016 (ESL)

                                    :

FERNANDO VIGIL PIOVANETTI      :

                                    :          CHAPTER 13

      Debtor                          :

_____ :

OPINION AND ORDER

This case is before the court upon the *Objection to Amended Plan and Request for Dismissal* (the "*Motion to Dismiss*", Docket No. 20) filed by Oriental Bank and Trust, represented by its servicing agent, Bayview Loan Servicing, LLC ("Oriental"), on the ground that the Debtor is ineligible to be a Chapter 13 debtor under 11 U.S.C. § 109(e). In his *Reply* (Docket No. 28)*,* the Debtor affirms his eligibility alleging that since he is not the principal debtor of the debt with Oriental, but rather the guarantor. The Debtor alleges that the same is contingent upon the principal's default on the loan and may not be considered as a claim for eligibility purposes. For the reasons stated below, the court finds that the Debtor is ineligible for Chapter 13 relief.

Factual and Procedural Background

On June 29, 2007, the Debtor jointly and severally guaranteed a loan by Eurobank, now Oriental, to Santolaya, Inc. ("Santolaya"). See Docket No. 20-1, pp. 1-3. Santolaya filed a voluntary Chapter 11 bankruptcy petition on October 5, 2012, Case No. 12-07949 (ESL). When Santolaya filed for bankruptcy, it was in default of its obligations with Oriental[1].

The Debtor filed his Chapter 13 bankruptcy petition on October 8, 2012 (Docket No. 1). He did not include Oriental as a creditor in his schedules. On October 29, 2012, the Debtor filed his *Chapter 13 Payment Plan Dated October 29, 2012* (Docket No. 10) and on November 1, 2012, he filed an *Amended Chapter 13 Payment Plan Dated November 1, 2012* (Docket No. 11).

---

[1] On September 24, 2004, Santolaya signed a *Construction Loan Agreement* with Eurobank, now Oriental, which included a list of defaulting events, including filing for bankruptcy. See Claims Register No. 4-1, Part 5, pp. 15-17. The *Amended and Restated Credit Agreement* also made reference to the obligations in the *Construction Loan Agreement* and its consequences in the event of a default. See Claims Register No. 4-1, Part 17, pp. 15 and 28. In addition, Santolaya had also defaulted on the payments of the loan. See Claims Register No. 4-1, Part 14, pp. 1-2. Therefore, Santolaya was in default with Oriental's debt at the time it filed its bankruptcy petition. Also see subsection (C) the instant *Opinion and Order, infra*.

The creditors' meeting pursuant to 11 U.S.C. § 341 was held on November 8, 2012. Because the Debtor had not included the debt with Oriental in his schedules, he was confronted in that meeting with the *Continuing and Unlimited Guaranty* he executed before a Notary Public Rafael M. Arrillaga Romany on June 29, 2007 whereby he unconditionally guaranteed jointly and severally ("solidariamente") the punctual payment of all obligations of Santolaya with Oriental[2]. See Docket Nos. 20, p. 2, ¶ 6, and 20-1, pp. 1-3.

On November 9, 2012, the Chapter 13 Trustee filed the *§ 341 Meeting Minutes and Report on Confirmation* stating that the "Debtor does not qualify to be a Chapter 13 Debtor" because "he failed to include a debt with Oriental in the amount of $6,998,991.39" and he is an "ilimited [*sic*] personal guarantor of this debt, which is secured for the corporation [referring to Santolaya, but] unsecured regarding [the] Debtor in this case". (Docket No. 14, p. 2, Section V). The Chapter 13 Trustee also prompted the Debtor to amend *Schedule F* to include the debt with Oriental. Id.

On November 14, 2012, the Debtor filed *Amended Schedule F* (Docket No. 15) to include: (a) Oriental as an unsecured creditor in connection with loans and credits extended to/or for the account of Santolaya, guaranteed by the Debtor as cosigner, as a contingent and unliquidated debt for $6,998,991.39; (b) Paul T. De Vlieger, Esq., as assignee for US Fidelity; and (c) Wigberto Lugo Mender, Esq., as assignee for Santolaya. On November 15, 2012, the Debtor filed a *Motion to Inform Amended ... Schedule F* (Docket No. 17) alleging that in regards to Oriental's debt, the account was current as of the date of filing of the bankruptcy petition and continues to be current and paid through Santolaya's Chapter 11 *Plan of Reorganization* in Case No. 12-07949 (ESL).

On November 15, 2012, the Debtor filed a *Second Amended Chapter 13 Payment Plan Dated November 14, 2012* (Docket No. 18).

On November 27, 2012, Oriental filed its *Motion to Dismiss* (Docket No. 20) on the grounds that the Debtor is ineligible to file for Chapter 13 bankruptcy relief. Oriental alleges that the

---

[2] Although the lender in the *Continuing and Unlimited Guaranty* was Eurobank, it was subsequently assigned to Oriental in 2010, when the Federal Deposit Insurance Corporation ("FDIC") sold to Oriental certain assets formerly property of Eurobank, including the assets relating to Santolaya and the Debtor. See Docket Nos. 20, p.1, ¶ 2, and 20-2, pp. 1-2.

Debtor's unsecured debt in the amount of $6,998,991.39 with Oriental exceeds the maximum allowed under Section 109(e) of the Bankruptcy Code. Although the Debtor included the debt with Oriental in *Amended Schedule F* (Docket No. 15) as "contingent" and "liquidated", Oriental argues that it is noncontingent and liquidated and must therefore be considered for Section 109(e) eligibility purposes[3].

On November 29, 2012, the Chapter 13 Trustee filed an *Unfavorable Report on Proposed Plan Confirmation under § 1325* (Docket No. 21) sustaining, *inter alia*, that the *Second Amended Chapter 13 Payment Plan Dated November 14, 2012* (Docket No. 18) cannot be confirmed that because the Debtor is not eligible for bankruptcy relief under chapter 13 inasmuch as the unsecured debts, including the one with Oriental in the amount of $6,998,991.39, exceed the statutory limit amount of $360,475.00, and the Debtor has failed to demonstrate that Oriental's claim is contingent or unliquidated.

On December 26, 2012, the Debtor filed a *Reply* to Oriental's *Motion to Dismiss* (Docket No. 28) arguing that in regards to the debt with Oriental, he is only a guarantor of Santolaya and that it is currently in good terms, as it has always been since its inception. The Debtor also claims that he has never been called to respond as guarantor to Oriental on Santolaya's loan nor has Oriental exerted any efforts to collect from him because the loan has never been defaulted by the corporation, and that Oriental has never filed a proof of claim or submitted the loan documents in support of its allegations, which makes addressing the bad faith and unfair treatment allegations premature.

On February 6, 2013, Oriental filed its *Proof of Claim* with its corresponding supporting documentation, including the Santolaya loan documents (the "Loan Documents"). See Claims Register No. 4-1.

A confirmation hearing was held on February 13, 2013 (Docket No. 31). The court took under advisement the determination on the Debtor's Chapter 13 eligibility and continued the confirmation hearing without a date pending a resolution on the Debtor's eligibility.

---

[3] Although Oriental's *Motion* to *Dismiss* is premised on two other grounds, the court will only consider the eligibility one as it is dispositive.

Applicable Law and Analysis

*(A)     Eligibility Requirements to be a Chapter 13 Debtor under 11 U.S.C. § 109(e)*

Section 109(e) of the Bankruptcy Code establishes the eligibility requirements for a debtor to obtain relief under Chapter 13 as follows:

> Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $383,175 and noncontingent, liquidated, secured debts of less than $1,149,525 or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $383,175 and noncontingent, liquidated, secured debts of less than $1,149,525 may be a debtor under Chapter 13 of this title. 11 U.S.C. § 109(e).

The term "individual with regular income" in Section 109(e) means an "individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of [the Bankruptcy Code], other than a stockbroker or a commodity broker". 11 U.S.C. § 101(30). In other words, "Section 101(30) ... contemplates that Chapter 13 debtors will have disposable income from which to make plan payments." Pellegrino v. Boyajian (In re Pellegrino), 423 B.R. 586, 589 (B.A.P. 1st Cir. 2010). In the instant case, the Debtor's disposable income has not been disputed.

"The eligibility criteria set forth in Section 109(e) are specific and restrictive, with monetary amounts established to govern eligibility so as to ensure that those persons for whose benefit the chapter is directed are those who employ its provisions." Alan N. Resnick and Henry J. Sommer, 2 Collier on Bankruptcy ¶ 109.06[1] (16th ed. 2013) at p. 109-37. Thus, "the eligibility limits of Section 109(e) should be strictly construed." In re Rios, 476 B.R. 685, 688 (Bankr. D. Mass. 2012), citing In re Soderlund, 236 B.R. 271, 274 (B.A.P. 9th Cir. 1999). Also see In re Marchetto, 24 B.R. 967, 969 (B.A.P. 1st Cir. 1982) ("[t]he provisions of Section 109(e) have consistently been strictly interpreted"), citing In re Cronkleton, 18 B.R. 792, 793 (Bankr. S.D.O.H. 1982) ("[c]ourts have consistently held that the limiting provisions of Section 109(e) of the Bankruptcy Code are to be strictly interpreted, and debtors who exceed the debt limitations do not qualify for Chapter 13 relief"); In re Brown, 302 B.R. 913, 915 (Bankr. D. Or. 2003) ("The limits created by Section 109 are jurisdictional.") The court proceeds to determine if the Debtor complies with the monetary

4

ceilings of Section 109(e).

*(B)*      *How to Determine Chapter 13 Eligibility under Section 109(e)*

Eligibility for Chapter 13 is based upon debts as of the petition date. DeJounghe v. Lugo Mender (In re DeJounghe), 334 B.R. 760, 768 (B.A.P. 1st Cir. 2005). The starting point of the eligibility analysis is the debtor's schedules. Id. at 768. There is a split among circuits as to when a court can look beyond the schedules to determine a debtor's Chapter 13 eligibility. For instance, "the Sixth, Seventh, and Ninth Circuit Courts of Appeal, have held that a bankruptcy court should not look beyond a debtor's schedules in determining [his/her] eligibility for Chapter 13 relief unless the court determines that the debtor did not file its schedules in good faith." In re De La Hoz, 451 B.R. 192, 197 (Bankr. M.D. Fla. 2011). "A minority of courts have held, seemingly contrary to the majority view, that a court can look beyond a debtor's schedules to determine the [his/her] eligibility for Chapter 13 relief even absent allegations of bad faith." Id. at 199. The Bankruptcy Appellate Panel for the First Circuit has established that "when it appears the debtor did not exercise reasonable diligence or good faith in completing and filing the schedules, the bankruptcy court may look to other evidence, including post-petition events, to determine eligibility." In re DeJounghe, 334 B.R. at 768. Also see In re Rios, 476 B.R. 685, 688 (Bankr. E.D. Ma. 2012) (following the analysis in In re DeJounghe).

A debtor's characterization of the debt is not ultimately conclusive. In re De Jounghe, 334 B.R. at 768, citing In re Stern, 266 B.R. 322, 326 (Bankr. D. Md. 2001) (remarking that debtor's labeling of claim as "unliquidated" did not make it so). Also see In re Redburn, 193 B.R. 249, 255 (Bankr. W.D. Mich. 1996) ("Although a court should rely primarily upon the debtor's schedules the court is not necessarily bound by the information contained in a debtor's schedules where it appears to a legal certainty that the amount owed is other than what the debtor says is owed..."). The court cannot allow a debtor to self-determine his/her own bankruptcy eligibility. Moreover, a debtor must assert reasonable diligence when preparing his/her bankruptcy schedules. Gonsalves v. Belice (In re Belice), 480 B.R. 199, 201 (B.A.P. 1st Cir. 2012) ("the burden is on the debtors to use reasonable diligence in completing their schedules and lists"), citing Lubeck v. Littlefield's Restaurant Corp. (In re Fauchier), 71 B.R. 212, 215 (B.A.P. 9th Cir. 1987). Furthermore, debtors "must justify the

inaccurac[ies] in preparing [their] schedules." In re Belice, 480 B.R. at 201.

Although in the instant case the Debtor did not initially disclose the debt with Oriental in *Schedule F*, he did so after the § 341 creditors' meeting upon being confronted by Oriental with his *Continuing and Unlimited Guaranty*. The Debtor ultimately disclosed the debt with Oriental in the amount of $6,998,991.39 in amended *Schedule F*, qualifying it as "unliquidated" and "contingent" (Docket No. 15, p. 3). He also alleged the debt was current and being paid through Santolaya's Chapter 11 *Plan of Reorganization*. See Docket No. 17, ¶ 2(a). The totality of the circumstances of the instant case prompts the court to find that the Debtor's initial omission of including Oriental's debt in his schedules constitutes the lack of reasonable diligence that warrants the court to look beyond the schedules, such as the Loan Documents filed by Oriental with its *Proof of Claim* (Claims Register No. 4-1), to determine the his eligibility for Chapter 13 relief. See In re DeJounghe, 334 B.R. at 768.

*(C)    Non-contingent and Liquidated Debts and their Consideration in Chapter 13 Eligibility*

Oriental argues that Debtor's debt of $6,998,991.39 is "non-contingent and undisputed"[4], that Debtor's qualification of that debt as contingent and unliquidated is intended to gerrymander his right to remain in Chapter 13, and that the concept of a liquidated debt relates to the amount of the liability, not its existence. See Docket No. 20, p. 3, ¶¶ 10-11. Oriental contends that a debt is liquidated if the amount can be readily ascertained either by reference to an agreement of by simple mathematics and that in the instant case, Oriental's unsecured claim relates to a pre-petition commercial loan agreement pursuant to which it is possible to determine the precise amount owed as of the petition date by a simple mathematical computation.

The issue before the court is whether or not the Debtor meets the eligibility requirements in 11 U.S.C. §§ 101(30) and 109(e) to be a Chapter 13 debtor. The main controversy to determine eligibility in the instant case hinges on whether the debt with Oriental is contingent and liquidated and whether it was so at the time of Debtor's Chapter 13 petition. If the debt is contingent and

---

[4] The term "undisputed" is not mentioned in Section 109(e) of the Bankruptcy Code. Thus, the court will not consider it as a factor.

unliquidated, it cannot be considered for Chapter 13 eligibility determination under Section 109(e) of the Bankruptcy Code. See 11 U.S.C. § 109(e); In re Sunders, 440 B.R. 336, 341 (Bankr. E.D. Pa. 2006).

A "debt" is a "liability on a claim". 11 U.S.C. § 101(12). A "claim" mans a "right to payment, whether such right is ... liquidated ... [or] ... contingent...". 11 U.S.C. § 101(5)(A). The Bankruptcy Code does not define the terms "contingent" or "liquidated". Case law, however, has established that "[t]he terms 'liquidated' and 'unliquidated' generally refer to a claim's value (and the size of the corresponding debt) and the ease with which that value can be ascertained." In re DeJounghe, 334 B.R. at 769, citing Mazzeo v. United States (In re Mazzeo), 131 F.3d 295, 304 (2nd Cir. 1997). If the claim is subject to ready determination and precision in computation of the amount due, it is generally viewed as liquidated. In re Huelbig, 313 B.R. 540, 544 (D.R.I. 2004); In re Vaughn, 276 B.R. 323, 325 (Bankr. D.N.H. 2002); In re Keenan, 201 B.R. 263 (Bankr. S.D. Cal. 1996); In re Mitchell, 255 B.R. 345, 360 (Bankr. D. Ma. 2000). If the value depends instead on "a future exercise of discretion, not restricted by specific criteria, the claim is unliquidated." In re Mazzeo, 131 F.3d at 304. Therefore, "courts have generally held that a debt is liquidated if its amount is readily and precisely determinable, as where the claim is determinable by reference to an agreement or by a simple computation." Alan N. Resnick and Henry J. Sommer, 2 Collier on Bankruptcy ¶ 109.06[2][c] (16th ed. 2013). Because in the instant case, the debt with Oriental arises from the Loan Documents (Claims Register No. 4-1), the amounts owed are readily available by simple contractual computation. The debt is therefore liquidated.

Contingent debts have been defined by case law as those in which a liability is dependent upon a future extrinsic event. See In re Mazzeo, 131 F.3d at 303; In re Ford, 967 F.2d 1047, 1051 (5th Cir. 1992) ("Claims are contingent as to liability if the debt is one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor and if such triggering event or occurrence was one reasonably contemplated by the debtor and creditor at the time the event giving rise to the claim occurred."); In re Kwiatkowski, 486 B.R. 409, 414-415 (Bankr. E.D. Mi. 2013) ("a contingent debt is one which the debtor will be called upon to pay only upon the occurrence or happening of an

extrinsic event which will trigger the liability of the debtor to the alleged creditor"); In re Star, 2008 Bankr. LEXIS 323 at *24, 2008 WL 324125 at *6 (Bankr. E.D.Pa. 2008); In re McGarry, 230 B.R. 272, 275 (Bankr. W.D. Pa. 1999); Black's Law Dictionary, West Publishing (9th ed. 2009) at p. 282 (defining "contingent claim" as "claim that has not yet accrued and is dependent on some future event that may never happen"). Generally, "[t]he classic example of a contingent debt is a guaranty because the guarantor has no liability unless and until the principal defaults." In re Pennypacker, 115 B.R. 504, 507 (Bankr. E.D. Pa. 1990).

In the instant case, pursuant to the terms of the Loan Documents, Santolaya defaulted on the loan with Oriental before the Debtor filed his Chapter 13 petition (Docket No. 1) on two separate grounds. The first default was configured when Santolaya accumulated arrears and late fees before it filed its Chapter 11 bankruptcy petition. Compare Claims Register No. 4-1, Part 14, p. 1 with Claims Register No. 4-1, Part 5, .p. 16, ¶ 8.01.01 (Events of Default: Failure to Make Payments when Due). The second default occurred when Santolaya filed for bankruptcy[5]. See Claims Register No. 4-1, Part 5, p. 17, ¶ 8.01.07 (Events of Default: Bankruptcy). The contractual consequence of any default was the following: "all sums theretofore advanced with all accrued interest thereon and all other amounts due under this Agreement, the Notes and the other Loan Documents shall ... become immediately due and payable". Claims Register No. 4-1, Part 5, pp. 15-16, ¶ 8.01 ("Events of Default"). The Debtor's personal *Continuing and Unlimited Guaranty* with Oriental states that he "unconditionally guarantees jointly and severally ("solidariamente") with the Borrower [referring to Santolaya] the punctual payment when due in strict accordance with the terms of any applicable agreement [referring to the Loan Documents]... with [Eurobank, now Oriental] ... whether for principal, interest, fees or expenses..." (Docket No. 20-1, p. 1). It further provides that:

> Upon the occurrence and during the continuance of **any event of default** (defined as the **non-payment when due** in strict accordance with the terms of any applicable agreement ... with the [Eurobank, now Oriental] **of any installment of principal or interest** ... **or the insolvency, bankruptcy or reorganization of [Santolaya]**) ... [Eurobank, now Oriental, is] ... authorized at any time and from time to time, **without notice to the undersigned** [referring to the Debtor] and to the fullest extent permitted

---

[5] The Loan Documents do not constitute an executory contract under 11 U.S.C. § 365. Thus, Section 365(e)(1) is not applicable.

by law, to set-off and apply any and all deposits ... at any time held and other indebtedness at any time owing by you [referring to Eurobank, now Oriental] or for the credit or the account of the undersigned against any and all of the obligations of the undersigned now or hereafter existing under this Guaranty, **irrespective of whether or not you** [referring to Eurobank, now Oriental] **shall have made any demand under this Guaranty and although such obligations may be contingent or matured.** (Docket No. 20-1, p. 1; emphasis added.)

When the Debtor filed his Chapter 13 petition three (3) days after Santolaya had already filed its voluntary Chapter 11 petition, the debt with Oriental was not contingent upon an extrinsic event, but rather had become due and payable. Thus, the court concludes that the Debtor's liability on the guaranty was triggered when Santolaya defaulted on the debt with Oriental, that is, when it accumulated arrears and late fees and when it filed for bankruptcy. The subsequent confirmation of Santolaya's *Plan of Reorganization* does not affect the Debtor's liability on the guaranty. Consequently, the debt with Oriental ($6,998,991.39) must be considered to determine the Debtor's eligibility for Chapter 13 relief, which exceeds the maximum established in Section 109(e) for unsecured debts ($383,175).

Conclusion

In view of the foregoing, the court finds that the Debtor is ineligible to file for Chapter 13. The Debtor may move for conversion to another Chapter of the Bankruptcy Code within 14 days. Upon failure to do so, the case will be dismissed.

SO ORDERED.

In San Juan, Puerto Rico, this 16th day of May, 2013.

Enrique S. Lamoutte
United States Bankruptcy Judge